**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 18-613 (MAS) |
| v. | **MEMORANDUM OPINION** |
| RAO DESU |  |

This matter comes before the Court upon Defendant Rao Desu's ("Defendant") Motion for Judgment of Acquittal or, In the Alternative, for a New Trial (ECF No. 118); Defendant's Supplemental Brief in Further Support of His Motion for Judgment of Acquittal or, In the Alternative, for a New Trial[1] (ECF No. 121); and Defendant's Additional Argument[2] (ECF No. 123-1). The United States of America (the "Government") opposed. (ECF No. 130.) Defendant replied. (ECF No. 134.) The parties submitted additional briefing. (ECF Nos. 135, 136.) The Court, having carefully considered the parties' submissions, decides the matter without oral argument pursuant to Local Civil Rule 78.1, which is applicable to criminal cases under Local Criminal Rule 1.1. For the reasons stated below, the Court denies Defendant's Motion.

## I.      BACKGROUND

Defendant was indicted on October 10, 2018, and charged with six counts: (1) two counts of conspiracy to impede and impair the functions of the United States Internal Revenue Service ("IRS") by skimming cash and substantially understating the income from Heights Pharmacy

---

[1] The Court granted Defendant an extension of time to file his response to the Government's correspondence dated November 4, 2019. (ECF No. 117.)

[2] The Court granted Defendant's Motion for Leave to Make Additional Argument (ECF No. 123). (ECF No. 145.)

(Count One) and Arthur Avenue Pharmacy (Count Two) in violation of 18 U.S.C. § 371; and (2) four counts of aiding and assisting in subscribing to false personal or business federal tax returns to the IRS in violation of 26 U.S.C. § 7206(2):

- Defendant's Form 1040 from the 2011 tax year (Count Three);

- Defendant's Form 1040 from the 2012 tax year (Count Four);

- Arthur Avenue Pharmacy's Form 1120S from the 2012 tax year (Count Five); and

- Heights Pharmacy's Form 1120S from the 2012 tax year (Count Six).

(*See generally* Indictment, ECF No. 1.)

Trial began on October 7, 2019. (Trial Tr.[3] ("Tr.") 1:10.) The Government's evidence at trial consisted of testimony from witnesses, such as an IRS Special Agent (the "Government's Summary Witness"), Defendant's accountant, and alleged co-conspirators Darshna Desai ("Desai") and Manish Pujara ("Pujara"), as well as various records, including pharmacy cash register tapes, coded deposit slip receipts, records purporting to contemporaneously track the amount of the cash skim, bank statements, accounting documents, tax returns, summary charts, and a recording of a conversation Defendant had with Desai. After the Government rested, Defendant moved for a judgment of acquittal on all counts. (Tr. 1148:23, 1150:18–1151:1.) The Government opposed. (Tr. 1151:5–1155:10.) The Court reserved its decision on the motion. (Tr. 1155:18.)

Defendant put on his case, which consisted of testimony from fact, character, and expert witnesses, as well as several exhibits, including various bank and tax records. Defendant rested on October 18, 2019. (Tr. 1719:13.) On October 21, 2019, the jury began its deliberations and returned

---

[3] Trial transcripts are available at ECF Nos. 95 through 102 and 137.

a verdict of guilty on all six counts the same day. (Tr. 1719:17–1720:2.) Defendant now moves for acquittal on all counts or, in the alternative, for a new trial pursuant to Federal Rules of Criminal Procedure 29 and 33.

## II.    MOTION FOR ACQUITTAL

### A.    Legal Standard

"Under Rule 29, a defendant who asserts that there was insufficient evidence to sustain a conviction shoulders 'a very heavy burden.'" *United States v. Tiangco*, 225 F. Supp. 3d 274, 278–79 (D.N.J. 2016) (quoting *United States v. Anderson*, 108 F.3d 478, 481 (3d Cir. 1997)). The Court "cannot substitute its judgment for that of the jury." *Id.* at 279. Rather, the Court "must view the evidence, and all reasonable inferences therefrom, in the light most favorable to the prosecution, resolving all credibility issues in the prosecution's favor." *Id.* "Having done so, the [C]ourt must uphold the conviction if '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original).

### B.    Sufficiency of Evidence

At the end of the Government's case-in-chief, Defendant moved for acquittal on all counts, arguing that "no reasonable jury who [ha]s heard the evidence here could find that the testimony that has been put in is remotely plausible." (Tr. 1150:18–1151:1.) Defendant now "renews the motion for judgment of acquittal that he made at the close of the Government's case." (Def.'s Moving Br. 1, ECF No 118; Def.'s Suppl. Br., ECF No. 121.)

###        1.    A rational juror could have found that the Government proved all elements of Counts One and Two beyond a reasonable doubt.

The Government must prove four elements beyond a reasonable doubt for a jury to find Defendant guilty of conspiracy to defraud the United States under 18 U.S.C. § 371. First, two or

more parties must agree to defraud the United States. 18 U.S.C. § 371; *United States v. Rankin*, 870 F.2d 109, 113 (3d Cir. 1989); *see* Third Circuit Model Criminal Jury Instructions § 6.18.371B. Second, Defendant must have been a party to that agreement. 18 U.S.C. § 371; *Rankin*, 870 F.2d at 113; *see* Third Circuit Model Criminal Jury Instructions § 6.18.371B. Third, Defendant must have joined the agreement or conspiracy knowing of its objective to defraud the United States. Third Circuit Model Criminal Jury Instructions § 6.18.371B. Fourth, a member of that group must have made an overt act to further that goal. 18 U.S.C. § 371; *Rankin*, 870 F.2d at 113; *see* Third Circuit Model Criminal Jury Instructions § 6.18.371B.

The following evidence introduced at trial supports the first two elements of both Counts One and Two: Both Pujara and Desai testified that Defendant designed and orchestrated the cash skims at Arthur Avenue Pharmacy and Heights Pharmacy, respectively, and that Defendant directed them to set aside the cash proceeds from the pharmacy sales instead of depositing the proceeds into the bank. (Tr. 208:17–209:22, 733:18–20, 790:24–791:8, 820:22–821:7.) Furthermore, the Government introduced years-worth of cash register z tapes and register reports that showed daily cash sales occurring at each pharmacy. (GX213–226, GX246.1–246.36, GX436.) The Government also introduced deposit slips from the Arthur Avenue Pharmacy bank account to demonstrate no cash was deposited into the account during the conspiracy, (GX455), and deposit slips from the Heights Pharmacy bank account to demonstrate the small amount of cash deposited into that account, (GX 227–245). The Court finds that, for both Counts One and Two, there was ample evidence presented at trial for a rational juror to conclude two or more people had an agreement and Defendant was one of those parties.

As to the third element, Pujara and Desai testified on the conspirators' understanding that cash income did not appear in the pharmacy bank records; the pharmacy accountants were not told

about the skimmed cash; and the cash income did not appear on the pharmacies' and conspirators' tax returns. (Tr. 209:8–14, 231:11–233:7, 463:3–465:8, 465:11–18, 789:12–790:2, 790:19–792:8.) The Court finds, consequently, that a rational juror could have concluded that Defendant shared a unity of purpose with each of the co-conspirators.

As to the fourth element, Pujara and Desai testified that the tax returns for both pharmacies did not reflect the skimmed cash and that the conspirators each filed false individual tax returns. (Tr. 231:11–233:7, 465:3–467:6, 469:3–5, 470:11–16, 789:12–790:2, 790:19–792:8.) Thus, the Court finds a rational juror could have concluded that a member of the conspiracy committed an overt act. For these reasons, a rational juror could have found that the Government proved all elements of Counts One and Two beyond a reasonable doubt.

> 2. <u>A rational juror could have found that the Government proved all elements of Counts Three through Six beyond a reasonable doubt.</u>

The Government must prove four elements beyond a reasonable doubt for a jury to find Defendant guilty of filing false statements in tax returns under 26 U.S.C. § 7206(2). First, Defendant must aid or assist in, or procure, counsel, or advise the preparation of federal income tax returns that are subsequently filed with the IRS. 26 U.S.C. § 7206(2); *United States v. Gambone*, 314 F.3d 163, 174 (3d Cir. 2003); *see* UNITED STATES DEPARTMENT OF JUSTICE TAX DIVISION, CRIMINAL TAX MANUAL § 13.04 (2012). Second, those tax returns must be false in any material matter. 26 U.S.C. § 7206(2); *Gambone*, 314 F.3d at 174. A material matter is any matter that would impact the Government's ability to accurately calculate an individual's tax liability or refund. Third Circuit Model Criminal Jury Instructions § 6.26.7206-3. Third, Defendant must not believe that the returns were true and correct as to those material matters. Third Circuit Model Criminal Jury Instructions § 6.26.7206-4. Finally, Defendant must act willfully. 26 U.S.C. § 7206(2); *Gambone*, 314 F.3d at 174; *see* UNITED STATES DEPARTMENT OF JUSTICE TAX

DIVISION, CRIMINAL TAX MANUAL § 13.04 (2012). Willfulness in a tax setting means "intentional action with bad purpose; that is, a deliberate commission of the specified violation with the idea of evading taxes and with the intention of getting away with it." *United States v. La Haye*, 548 F.2d 474, 475 (3d Cir. 1977).

Counts Three through Six charge Defendant with aiding and assisting in the preparation of false federal income tax returns. (Indictment 15.) First, Defendant's tax preparer testified that accounting documents and tax returns were prepared from pharmacy bank statements endorsed by Defendant; those corporate tax returns then flowed through to Defendant's personal tax returns. (Tr. 447:14–16, 448:2–4, 463:3–467:6.) Second, evidence was introduced that the corporate and personal tax returns did not include cash income that was not deposited in the pharmacy bank accounts. (Tr. 209:8–14, 463:3–465:8, 465:11–18; 789:12–790:2, 790:19–792:8, 1128:12–16, 1128:23–1129:1.) Third, evidence was introduced that Defendant knew the tax returns were based on bank records that failed to accurately track the pharmacies' cash proceeds and reviewed and approved those returns. (Tr. 209:10–210:14, 466:10–18, 470:14–18, 820:22–822:11.) Fourth, evidence was introduced that Defendant acted willfully by reviewing and authorizing tax returns filed on his behalf; that Desai and Desu reviewed business records and tax filings together; and that Desu coached Pujara to hide income by spending it instead of banking it. (Tr. 210:8–9, 231:3–7, 465:24–466:9, 792:12–16, 820:1–821:11, 840:3–8, 846:5–6.) A rational juror, therefore, could find that Defendant willfully assisted in filing false personal and corporate tax returns.

C.    **Sufficiency of Conspiracy Claims**

Defendant argues that he is entitled to a judgment of acquittal on Counts One and Two because the Indictment fails to allege any nexus between the conspiracies in those counts and any then-pending proceeding or investigation and, therefore, fails to state conspiracy. (Def.'s Moving

6

Br. 11–13 (citing *Marinello v. United States*, 138 S. Ct. 1101 (2018)).) Defendant argues that this argument is timely under *United States v. Panarella*, 277 F.3d 678 (3d Cir. 2002). (*Id.* at 10 n.6.)

The Government argues that the 2014 amendments to Federal Rule of Criminal Procedure 12 abrogated *Panarella* and that Defendant's arguments are, therefore, untimely. (*Id.* at 38–40.) The Government further argues that "[Defendant] is making a pure failure-to-state-a-claim argument, without even attempting to show good cause for having sat on this contention." (Gov't's Opp'n Br. 37.) Lastly, the Government argues that, even if Defendant's argument was timely, his *Marinello* argument is substantively wrong. (*Id.* at 38–40.)

1.    Defendant's failure-to-state-a-claim argument is untimely.

An indictment's "failure to state an offense" is a defect that must be raised before trial "if the basis of the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(B)(v). "This requirement serves a number of purposes, including sparing the court, the witnesses, and the parties the burden and expense of a trial." *United States v. O'Brien*, 926 F.3d 57, 82 (2d Cir. 2019) (citations omitted). Moreover, without this rule, indictments might be "routinely challenged (and dismissed) after the jury has been seated and sworn, a result that would force courts frequently to confront complex Double Jeopardy questions." *Id.* (citations omitted).

Defendant functionally acknowledges that his posttrial motion challenging Counts One and Two is a Rule 12(b)(3) motion attacking the Indictment. (*See* Def.'s Moving Br. 10 n.6.) He, nonetheless, cites *Panarella* for the proposition that Rule 12 allows "a criminal defendant to contend that an indictment fails to charge an offense at any time, including on appeal." *Id.* But, as the Government argues, *Panarella* was decided before Rule 12 was amended in 2014. "Under the new version of Rule 12(b)(3) . . . all claims that an indictment is defective must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined

without a trial on the merits." *United States v. Speranza*, 804 F.3d 1113, 1118–19 (11th Cir. 2015).
"The Advisory Committee Notes accompanying the new rule explains it was 'amended to remove
language that allowed the court at any time while the case is pending to hear a claim that the
indictment . . . fails to state an offense.'" *Id.* at 1119 (quoting 2014 Advisory Committee
Amendment Notes). An indictment's failure to charge an offense "was previously considered fatal
whenever raised and was excluded from the general requirement that charging deficiencies be
raised prior to trial." *Id.* (quoting 2014 Advisory Committee Amendment Notes). In light of the
2014 Amendments, *Panarella* is no longer controlling, and Defendant's failure-to-state-a-claim
arguments are untimely.

> 2.    Defendant has not demonstrated good cause to assert his *Marinello* claim.

Defendant alternatively argues that, even if his arguments are untimely, the Court may
consider them posttrial if he "shows good cause." (Def.'s Reply Br. 9 (citing Fed. R. Crim.
P. 12(c)(3)), ECF No. 134.) Defendant argues "that he has good cause here, given the developing
state of the law post-*Marinello*, as the lower courts determine the implications of *Marinello* on
*Klein* conspiracies." *Id.*

The Court initially notes that Defendant's good cause argument is first raised on reply and,
therefore, also untimely. Nonetheless, the Court considers his argument. Here, the authorities
Defendant cites in support of his posttrial *Marinello* arguments were available to him before trial.
*Marinello* was decided in 2018, while Defendant was tried in 2019. The only post-*Marinello* case
law Defendant cites to attack Counts One and Two rejected Defendant's arguments. (Def.'s
Moving Br. 14 n.8 (citing *United States v. Flynn*, No. 16-347, 2019 WL 135701 (D. Minn. Jan. 8,
2019)).) Defendant's other cited authorities were published years, if not decades, before *Marinello*
and the start of trial. (*See generally id.* at 10–16.) And, even if case law "is handed down which
may better support an argument" at a later time, courts have held that these new developments do

not constitute "good cause" for failing to make required Rule 12 pretrial arguments. *United States v. Daniels*, 803 F.3d 335, 353 (7th Cir. 2015) (noting that, even without new law, defendants have the pretrial option of arguing that the issue is one of first impression). Accordingly, Defendant has not shown good cause for his failure to raise his Rule 12(b)(3) arguments before trial. For these reasons, Defendant's Rule 12(b)(3) claim is untimely.

### D.   Statute of Limitations Defense Against Arthur Avenue Pharmacy Conspiracy Count

Defendant argues that Count Two is time-barred and that he should be, accordingly, acquitted of conspiracy related to the Arthur Avenue Pharmacy. (Def.'s Add'l Br. *2,[4] ECF No. 123-1.) Defendant argues (1) that Pujara withdrew from the Arthur Avenue Pharmacy conspiracy on June 30, 2012, more than six years before the return of the Indictment, (*id.* *2), and (2) that the Government failed to prove any of the three alleged overt acts for Count Two occurred during the existence of the conspiracy, (*id.* at *9). The Government argues (1) that Defendant waived his statute of limitations argument, (Gov't's Opp'n Br. 43–46); (2) that Defendant failed to prove at trial Pujara withdrew from the conspiracy on June 30, 2012, (*id.* at 46–48), and (3) that the Government proved at trial Pujara continued to participate in the conspiracy until at least September 11, 2013, when he filed his Form 1040 for the 2012 tax year, (*id.* at 48 (citing GX407.6; Tr. 166:10–14, 231:11–233:7)). The Court addresses each of the Government's arguments in turn.

First, the Court finds that Defendant did not waive his right to raise a statute of limitations argument posttrial. At trial, the parties stipulated that no cash skimming occurred after June of 2012, which resolved Defendant's motion to dismiss Count Two. (Tr. 1271:24–1274:14,

---

[4] Pages preceded by asterisk refer to page numbers of the ECF header.

1449:18–19, 1450:2–4, 1537:13–17.[5]) By entering into the stipulation and withdrawing his motion to dismiss *at trial*, Defendant did not waive his right to argue *posttrial* that Government failed to prove a key element of its conspiracy claim. Defendant's argument was not available to him in the middle of the Government's case. *See United States v. Olano*, 507 U.S. 725, 733, (1993) ("[W]aiver is the "intentional relinquishment or abandonment of a known right.").

Second, the Court finds that Defendant did not prove at trial Pujara withdrew from the conspiracy on June 30, 2012. That Pujara testified to quitting Arthur Avenue Pharmacy and selling his portion of the pharmacy to Defendant in June or July of 2012 is not enough to show Pujara withdrew from the conspiracy.

> Mere cessation of activity in furtherance of an illegal conspiracy does not necessarily constitute withdrawal. The defendant must present evidence of some *affirmative* act of withdrawal on his part, typically either a full confession to the authorities or communication to his co-conspirators that he has abandoned the enterprise and its goals.

*United States v. Steele*, 685 F.2d 793, 803–04 (3d Cir. 1982) (emphasis added). Defendant does not point to any affirmative act by Pujara from which the jury could find he withdrew from the conspiracy. (*See generally* Def.'s Add'l Br.)

Third, even if Defendant made a prima facie case of withdrawal, the Government introduced evidence at trial from which a juror could find Pujara continued to participate in the overall conspiracy until on or about September 2013. Pujara testified that he filed his Form 1040 for the 2012 tax year, which did not report the cash he and Defendant skimmed from Arthur Avenue Pharmacy during 2012. (Tr. 230:19–233:21.) This action—the filing of his personal tax

---

[5] The stipulation stated, in relevant part, "the Indictment does not allege that after June of 2012, the date by which [Defendant] became the sole owner of Heights and Arthur Avenue Pharmacies, that he continued to collect cash for his personal gain from the cash registers of those pharmacies." (Tr. 1537:13–17.)

return—was taken on September 6, 2013, was done in furtherance of the conspiracy charged by hiding the skimmed cash, and was taken within six years of the return of the Indictment. Although Defendant argues that "[n]o evidence was presented at trial . . . about *when* Mr. Pujara gave his accountant information for the six months ending on June 30, 2012 to include in his IRS Form 1040," (Def.'s Add'l Argument *8), this point is of no consequence. Pujara's accountant filed his tax return on his behalf. By design, Pujara was not to inform his accountant about the cash skim. Thus, the Court finds the Government presented evidence from which a rational juror could have found Pujara performed an overt act in furtherance of the Arthur Avenue Pharmacy conspiracy within six years of the return of the Indictment.

## III.   MOTION FOR NEW TRIAL

### A.   Legal Standard

Pursuant to Rule 33(a), the Court may vacate any judgment and grant a new trial if the interest of justice so requires. Fed. R. Crim. P. 33(a). Evidence is not viewed favorably to one side or the other, instead the Court "exercises its own judgment." *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002).

A district court "can order a new trial only if it believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted." *United States v. Silveus*, 542 F.3d 993, 1004–05 (3d Cir. 2008) (internal quotation marks and citation omitted). A new trial is required when evidentiary errors "so infected the jury's deliberations that they had a substantial influence on the outcome of the trial." *United States v. Thornton*, 1 F.3d 149, 156 (3d Cir. 1993) (internal quotation marks and citation omitted); *see also United States v. Amirnazmi*, 648 F. Supp. 2d 718, 719 (E.D. Pa. 2009), *aff'd*, 645 F.3d 564 (3d Cir. 2011) (A new trial will be granted "if a defendant proves (1) that error occurred at trial, and (2) that error had a substantial influence on the verdict." (citation omitted)). "Motions for a new trial based on the

weight of the evidence are not favored." *United States v. Brennan*, 326 F.3d 176, 189 (3d Cir. 2003) (quoting *Gov't of V.I. v. Derricks*, 810 F.2d 50, 55 (3d Cir.1987)). Rule 33 motions are "granted sparingly and only in exceptional cases." *Silveus*, 542 F.3d at 1005 (internal quotation marks and citation omitted).

### B.   Government Exhibit 450

During discovery, the Government produced, and the defense received, an "entire set of bank records, including those that were intended to be contained on Government Exhibit 450" ("Government Exhibit 450" or "Exhibit 450"). (Gov't's Correspondence 2 n.1, ECF No. 106; *see also* Nanavati Decl. to Def.'s Reply Br. ¶ 4 ("During the pre-trial process, the [G]overnment produced . . . the Heights Pharmacy bank account statements that at trial were marked and introduced as Exhibit 450."), ECF No. 134-1.) Exhibit 450 contained relevant Heights Pharmacy's operating account records.

At trial, the parties stipulated to the admission of Exhibit 450, pursuant to Rules 803(6) and Rule 902(11) of the Federal Rules of Evidence. (Tr. 49:8–24.) Also admitted at trial without objection were Government Exhibits 503 and 505 (the "Summary Charts"). (Tr. 1106:5–8; 1109:7–10.) On October 18, 2019—the day the defense rested—the parties certified that "[they] have reviewed the exhibits and agreed that all exhibits in the Court's possession are the exhibits that have been admitted and moved into evidence and should[, therefore,] be provided to the jury for deliberations." (Exs. Certification, Ex. C to Gov't's Opp'n Br., ECF No. 130 at *60–61.) On October 21, 2019, the jury began its deliberations and returned a verdict of guilty on all six counts. (Tr. 1719:17–1720:2.) At no point during the four-hour-long deliberations did the jury raise any issues about Government Exhibit 450. (Gov't's Correspondence 2.)

On November 4, 2019, the Government reported to the Court and to the defense that the jury did not have access to certain files on the Government Exhibit 450 disc due to "an error in electronically copying the data." (Gov't's Correspondence 1.) The following files were affected:

- "Acct xxxxxx0683 – DVS Pharma Statements 2005-2006" (Bates range USVRD3482-3929)
- "Account xxxxxx0683 Statements 2011" (Bates range USVRD14907-14931)
- Acct xxxxxx0638 2011 deposit & checks pt1.pdf (Bates range USVRD14527-14665)
- Acct xxxxxx0638 2011 deposit & checks pt2.pdf (Bates range USVRD14666-14783)
- Acct xxxxxx0638 2011 deposit & checks pt3.pdf (Bates range USVRD14784-14905)
- Acct xxxxxx0683-2011 pt2 Deposits (Bates range USVRD15191-15434)
- Acct xxxxxx0683-2011 pt3 Deposits (Bates range USVRD15435-15717)

(*Id.*) The Government believed "the error occurred on all copies of Government Exhibit 450 including the copy sent to the Jury, the copy given to the defendant, the copies given to the Court before trial, and the Government's own copy at trial." (*Id.* at 2.)

Defendant now moves for a new trial because the Exhibit 450 error "infects the entire trial," or at least Counts One (the conspiracy count related to Heights Pharmacy) and Three (the false statement charge related to Defendant's personal 2011 tax return). (Def.'s Moving Br. 7.) Moreover, according to Defendant, the Exhibit 450 error "is not confined to a single exhibit"; rather, "the Government's [S]ummary [W]itness, the [S]ummary [C]harts, and its closing arguments were all based, in material part, upon years' worth of information not admitted into evidence. As a consequence, a new trial is required." (Def.'s Suppl. Br. 2.)

C.    **Defendant waived any arguments as to Government Exhibit 450.**

When a party waives an argument, or intentionally relinquishes a right, he "may not seek review of any alleged error flowing from such a waiver 'absent exceptional circumstances.'"

*United States v. James*, 955 F.3d 336, 345 (3d Cir. 2020) (quoting *United States v. Rose*, 538 F.3d 175, 179 (3d Cir. 2008));[6] *see also Olano*, 507 U.S. at 733. "[W]hen there is a waiver, [the court] conduct[s] no further analysis of the claimed error." *Id.* at 345 (citing *Gov't of Virgin Islands v. Rosa*, 399 F.3d 283, 290–91 (3d Cir. 2005)). A defendant's no-objection response may be considered an "intentional relinquishment or abandonment of a known right . . . to lodge an objection to [the] piece of evidence, and thus [may] constitute[] a waiver." *Id.* (citing *Olano*, 507 U.S. 725, 733 (1993)). In *James*, the court found that the defendant "was not blindsided" by the Government's use of a demonstrative aid when "the Government allowed him to review the [aid] in advance," and the defendant's waiver was, therefore, "knowing and intentional." *Id.* at 344.

Here, Defendant waived his right to object to Government Exhibit 450. Although Defense counsel argues that he "had no reason to doubt that Government Exhibit 450 was an accurate copy of the records that the defense had reviewed and[,] therefore[,] had no reason to object to Exhibit 450 until the Government disclosure," (Def.'s Moving Br. 2 n.2), counsel concedes that "had [he], or government counsel, reviewed the electronic files on the DVD marked as Exhibit 450, [they] would have realized that many of those files were corrupted and would not have permitted Exhibit 450 to be provided to the jury in that form." (Nanavati Decl. ¶ 9.) Here, beyond Defendant's failure to review the evidence before the evidence went back with the jury for deliberations, defense counsel certified that the exhibit had been reviewed and *should be given* to the jury. (*See* Exs. Certification.) Defendant, accordingly, had at the time the right to lodge an objection to Exhibit 450 and did not do so.

Moreover, "[a] defendant cannot complain on appeal of alleged errors invited or induced by himself, particularly where, as here, it is not clear that the defendant was prejudiced thereby."

---

[6] The parties provided briefing on the applicability of *James*. (*See* ECF Nos. 135, 136.)

*United States v. Console*, 13 F.3d 641, 660 (3d Cir. 1993). Here, Defendant stipulated at trial to the admissibility of Exhibit 450, (Tr. 49:8–24), subsequently relied upon the records contained in Exhibit 450, (Tr. 1672:10–13), and even now argues that the records missing from Exhibit 450 would have helped his case, (*see* Def.'s Moving Br. 6–9). On these facts, Defendant "invited the error and cannot complain now." *United States v. Kolodesh*, 787 F.3d 224, 231 (3d Cir. 2015) (citation omitted). For these reasons, Defendant waived his right to object to Exhibit 450 as admitted and may not now lodge a belated objection to the evidence.

> **D.    Even if Defendant's arguments on Exhibit 450 were not waived, Defendant fails to meet his burden for a new trial.**

Although the admission of improper evidence is grounds for a new trial, *see* Wright & Miller, 3 Fed. Prac. & Proc. Crim. § 589 (4th ed.), "[t]he burden lies with the defendant to prove that a new trial should be granted." *Amirnazmi*, 648 F. Supp. 2d at 719 (citation omitted). To meet his burden, Defendant must prove that the evidentiary errors "so infected the jury's deliberations that [it] had a substantial influence on the outcome of the trial.'" *Thornton*, 1 F.3d 156 (citation omitted).

Defendant argues that he is entitled to a new trial because the jury was exposed to "material extrinsic evidence that was not introduced at trial," including the missing portions of Government Exhibit 450, the testimony of the Government's Summary Witness, and the Government's closing arguments. (Def.'s Suppl. Br. 1–2.) The Government argues that Defendant "vastly overstate[s] the role of Exhibit 450." (Gov't's Opp'n Br. 29.) According to the Government, Exhibit 450 only "proved the skim was never deposited," whereas "other key exhibits (the copies of deposit slip receipts annotated by co-conspirator Darshna Desai with the amounts skimmed, the notebook she kept, and the [s]kim [n]otes she created) . . . directly proved skimming." (*Id.* at 2–3.) Here, considering the substantial evidence against Defendant, including the Government's key exhibits,

as well as the conversation recorded between Defendant and Desai, the accounting documents, and the tax returns, the Court finds there was sufficient evidence against Defendant for the jury to find him guilty on all counts. (*See also supra* Sections II.B.1, 2.) The copying error did not so infect the jury's deliberations that it had a substantial influence on the outcome of trial.

Defendant also argues that the missing bank records were exculpatory: (1) the jury could have concluded that "substantial amounts of cash that were deposited into Heights Pharmacy's operating account from 2004 to 2012," (Def.'s Moving Br. 6); and (2) the jury could have concluded that the Heights Pharmacy overreported its gross sales revenue, (*id.* at 6–9). Defendant acknowledges that, "for purposes of this argument, [Defendant] is assuming that all of . . . Exhibit 450 was actually introduced into evidence. However, as noted . . ., the [G]overnment failed to introduce a substantial portion of that exhibit into evidence." (Def.'s Moving Br. 8 n.5.) As an initial matter, Defendant's argument that portions of Exhibit 450 could have been exculpatory and his assertion that the Government is solely to blame for not admitting those portions underscore the Court's finding that Defendant invited the error of which he now complains. If these documents were essential to his defenses, Defendant should have ensured that the relevant records were available to the jury for deliberations. Regardless, even if he had not waived his right to object to Exhibit 450, the Court finds Defendant's arguments unavailing. With or without Exhibit 450, Defendant presented these arguments at trial. (Tr. 1374:9–1381:10, 1672:14–1673:2.) The Government presented counterargument on those points. (Tr. 505:3–14, Tr. 1672:14–1673:2.) "Motions for a new trial based on the weight of the evidence are not favored," *Brennan*, 326 F.3d at 189, and Defendant is not entitled to a new trial because he was unable to persuade the jurors. Thus, even if Defendant did not waive his arguments on Exhibit 450, Defendant fails to prove a new trial should be granted because of any error related to the exhibit.

**E.    Defendant fails to demonstrate that Government Exhibits 503 and 505 were improper evidence.**

Defendant argues that the Summary Charts were inadmissible because they "had to be based on evidence introduced into evidence during trial." (Def.'s Moving Br. 5.) This argument fails for several reasons. First, under Federal Rule of Evidence 1006, "a party may 'use a summary, chart, or calculation to prove the content of voluminous writings [or] recordings . . . that cannot be conveniently examined in court,' as long as the originals or duplicates are made available for examination or copying by other parties. Fed. R. Evid. 1006." *United States v. Georgiou*, 777 F.3d 125, 143 (3d Cir. 2015). "Rule 1006 does not require that the underlying materials actually be admitted into evidence." *United States v. Manamela*, 463 F. App'x 127, 132 (3d Cir. 2012) (citing *United States v. Pelullo*, 399 F.3d 197, 204 (3d Cir. 2005)). Here, Defendant does not dispute that (1) he received the materials underlying the Summary Exhibits prior to trial and (2) the underlying materials are admissible. (*See generally* Def.'s Moving Br.; Def.'s Suppl. Br.; Def.'s Reply Br.) Accordingly, even if the materials underlying the Summary Charts were not admitted, the Summary Charts would be, nonetheless, admissible. Second, Defendant provides no support that the Summary Charts were "*all* based, in *material* part," on the missing records from Exhibit 450. (*See* Def.'s Suppl. Br. (emphasis added).) In fact, on reply, Defendant did not dispute the Government's assertion that "the Summary Charts are based on underlying exhibits other than Exhibit 450: GX230-241, GX207, and GX211," (Gov't's Opp'n Br. 16). (*See generally* Def.'s Reply Br.) Defendant, therefore, fails to demonstrate that the Summary Charts were admitted in error. For these reasons, Defendant fails to carry his burden for a new trial.

IV.     **CONCLUSION**

For the reasons set forth above, Defendant's Motion for Acquittal or, In the Alternative, for a New Trial is denied. An order consistent with this Memorandum Opinion will be entered.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE