: **UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

CHAMBERS OF
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

CLARKSON S. FISHER FEDERAL
BUILDING & U.S. COURTHOUSE
402 EAST STATE STREET
TRENTON, N.J. 08608
609-989-2009

## NOT FOR PUBLICATION

### LETTER OPINION & ORDER
### Under Temporary Seal

**VIA CM/ECF**
All counsel of record

      Re:   *United States v. Rao Desu*
             Crim. No. 18-613 (MAS)

Dear Counsel:

This matter comes before the Court on Defendant Rao Desu's ("Defendant" or "Mr. Desu") March 23, 2021 Motion for Sentence Reduction under the First Step Act ("Motion"), 18 U.S.C. § 3582(c)(1)(A). (ECF No. 170.) The United States ("United States" or "Government") filed opposition on March 30, 2021 (ECF No. 172), Defendant filed a reply on April 2, 2021 (ECF No. 173), the United States filed supplemental correspondence on April 7, 2021 (ECF No. 174), and Defendant filed a response to the Government's supplemental correspondence on April 12, 2021 (ECF No. 175). On April 22, 2021, Defendant filed a Motion to Continue Surrender Date Pending Decision on Motion for Sentence Reduction. (ECF No. 176.) The Government filed opposition on April 22, 2021 (ECF No. 177), and Defendant filed a reply on April 23, 2021 (ECF No. 178). The Court has considered the parties' submissions, and for the reasons set forth below, denies Defendant's Motion without prejudice. The Court also denies Defendant's Motion to Continue Surrender Date.

## I.   BACKGROUND

On October 21, 2019, a jury found Defendant guilty on six counts of federal tax fraud. (Redacted Verdict Form, ECF No. 88.) On September 23, 2020, this Court sentenced Defendant to a term of thirty months, followed by two years of supervised release. (J. 2–3, ECF No. 152.) Defendant filed a Notice of Appeal on September 25, 2020. (ECF No. 153.)

On October 26, 2020, the Court granted Defendant's first request for an extension of his surrender date and set a surrender date of January 4, 2021. (ECF No. 157.) On December 9, 2020, the Court granted Defendant's second request for an extension of his surrender date and set a surrender date of March 5, 2021. (ECF No. 162.) On February 5, 2021, the Court granted Defendant's third request for an extension of his surrender date and set a surrender date of May 5, 2021. (ECF No. 168.) Defendant subsequently filed the Motion currently at issue before the Court.

## II.   PARTIES' POSITIONS

Even though Defendant has not yet surrendered to start serving his sentence, Defendant argues that he is eligible for a reduction in his sentence and has satisfied the exhaustion requirement. (Def.'s Moving Br. 6–9, ECF No. 170.) Defendant also argues that the Court can consider his Motion even though the matter is currently on appeal to the Third Circuit. (*Id.* at 10–11.) With respect to the sentence reduction eligibility, Defendant argues that "it is the imposition of sentence—not the beginning of sentence—that triggers eligibility for a reduction." (*Id.* at 7 (emphasis omitted).) Defendant cites out-of-district authority for the propositions that "[n]othing in the plain language of the statute requires the defendant to be in custody presently or to have served any portion of his sentence" and that "there is no 'express requirement [in the statute] that a defendant be in the custody of the Bureau of Prisons ["BOP"] . . . at the time he petitions for compassionate release." (*Id.* (citing *United States v. Hambrock*, No. 4:20CR26, 2021 WL 775399, at *2 (E.D. Va. Feb. 19, 2021), and *United States v. Austin*, 468 F. Supp. 3d 641, 643 (S.D.N.Y. 2020)). With respect to the satisfaction of administrative remedies, Defendant notes that he sent a request to the Warden of Fort Dix on February 16, 2021, requesting that the BOP designate Defendant to home detention or file a motion with the Court to reduce Defendant's sentence to time served and place him on supervised release with home detention. (*Id.* at 6.) Defendant alleges that the exhaustion requirement is satisfied because thirty days have elapsed since submission of the request. (*Id.*) Because the matter is currently on appeal, Defendant asserts that the Court may (1) defer consideration of the Motion; (2) deny the Motion; or (3) indicate that the Motion raises a substantial issue or that it would grant the Motion if the Court of Appeals remands for that purpose. (*Id.* at 10 (citing Fed. R. Crim. P. 37).)

Assuming he overcomes the procedural hurdles, Defendant asserts that he presents extraordinary and compelling reasons that warrant a sentence reduction. (*Id.* at 1, 11–34.) Mr. Desu, who is 53-years-old, argues that his numerous medical conditions, including severe coronary artery disease, stents in his heart, hypertension, obesity, sleep apnea, hyperlipidemia, and hypovitaminosis D "put him in one of the highest risk groups for severe complications, or even death, from COVID-19." (*Id.* at 1, 11.) Defendant also argues that he experienced a life-threatening reaction to the first dose of the Moderna vaccine in early January 2021 and, consequently, will not be able to protect himself from the virus through vaccination for the foreseeable future. (*Id.* at 22.) In addition, Defendant argues that the conditions at Fort Dix would place him at great risk of contracting COVID-19. (*Id.* at 25.) Defendant cites the "recent tragic deaths of high-risk Fort Dix inmates, Myron Crosby (a 58 year old who suffered from obesity, hyperlipidemia, hypertension, diabetes, kidney disease, and a recent heart attack) and Dominick Pugliese (a 61 year old who suffered from asthma, chronic pulmonary disease and hypertension)" as a "cautionary tale for why a high-risk inmate such as Mr. Desu . . . should be placed on home detention instead of designated to a prison facility." (*Id.* at 27–28.)

The Government opposes Defendant's Motion as both "procedurally improper and substantively flawed." (Gov't's Opp'n Br. 1, ECF No. 172.) With respect to the procedural posture of this matter, the Government argues that the language of the statute applies only to inmates serving sentences. (*Id.* at 4.) The Government asserts that § 3582(c)(1)(A)(i) expressly requires a defendant to have served at least some of a prison sentence. (*Id.*) The statute provides that "the court . . . may reduce the term of imprisonment (and may impose a term of probation or supervised

release with or without conditions that does not exceed *the unserved portion of the original term of imprisonment*), after considering the factors set forth in section 3553(a)[.]" (*Id.* (citing § 3582(c)(1)(A)(i) (emphasis in original)).) According to the Government, "[f]or a defendant like Desu, there is obviously no "*unserved portion*." It *all* remains unserved." (*Id.* (emphasis in original).)

The Government also argues that Defendant "ignores that multiple cases hold the failure to serve a significant portion of a custodial sentence is completely inconsistent with satisfaction of the § 3553(a) factors." (*Id.* at 8.) In addition, the Government asserts that, at this juncture, there has been no opportunity for the BOP to assess how it can address Defendant's health issues. (*Id.* at 10.)

On reply, Defendant argues that the Government's interpretation of the statute would lead to absurd results because Mr. Desu would be ineligible for a sentence reduction before he surrenders but eligible on the surrender date. (Def.'s Reply Br. 7–8, ECF No. 173.) Defendant, however, argues that "the very process of checking in to Fort Dix and exposing himself to potentially-infected inmates and staff could jeopardize [his] life." (*Id.*) Defendant argues that extraordinary and compelling reasons justify a sentence reduction and the § 3553(a) factors weigh heavily in favor of a sentence reduction. (*Id.* at 12–14.)

## III. LEGAL STANDARDS

A district court generally has limited authority to modify a federally-imposed sentence once it commences. *See United States v. Epstein*, No. 14-287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020); *Dillon v. United States*, 560 U.S. 817, 825 (2010). The First Step Act ("FSA"), however, permits district courts to grant compassionate release where there exists "extraordinary and compelling reasons" to reduce a sentence. 18 U.S.C. § 3582(c)(1)(A)(i). The statute provides, in relevant part, that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction.

18 U.S.C. § 3582(c)(1). As such, under the FSA, "a defendant seeking a reduction in his term of imprisonment bears the burden of establishing both that he has satisfied 1) the procedural prerequisites for judicial review, and 2) that compelling and extraordinary reasons exist to justify compassionate release." *Epstein*, 2020 WL 1808616, at *2.

3

## IV. DISCUSSION

As a preliminary matter, this Court finds persuasive the decisions by other judges in this district finding that the relief offered by Section 3582(c)(1)(A) is not available to defendants who have not begun to serve their sentences. *See United States v. Picardo*, Crim. No. 19-401, 2020 WL 6501730, at *2 (D.N.J. Nov. 5, 2020) (Chesler, J.); *United States v. Ahmad*, Crim. No. 19-493, 2021 WL 1300288, at *1–2 (D.N.J. Apr. 7, 2021) (Arleo, J.). Similar to the *Ahmad* Court, this Court does not find good cause to depart from the reasoning in *Picardo*.

Even if this Court did have jurisdiction, however, Defendant failed to demonstrate that the 18 U.S.C. § 3553(a) factors weigh in favor of relief. Rather, consideration of the § 3553(a) sentencing factors weigh strongly against a reduction in sentence.

The Court sentenced Mr. Desu on September 23, 2020. In reaching its sentencing determination, which included a downward variance of three levels, the Court discussed the nature and circumstances of the offense. The Court stated:

> [T]he defendant comes before this Court after having been found guilty by a jury to Counts 1 through 6 of the indictment.
>
> Counts 1 and 2 of the indictment charge that the defendant "did knowingly and willfully combine, conspire, confederate and agree with others . . . to defraud the IRS by impeding, impairing, obstructing and defeating the lawful government functions of the IRS to ascertain, compute, assess, and collect income taxes."
>
> Counts 3 through 6 charge that the defendant aided and assisted in subscribing to false tax returns by "intentionally withholding from tax preparation companies information regarding the skimmed cash from the pharmacies, thereby causing the IRS forms 1120-S, and IRS forms 1040 that Mr. Desu caused to be filed with the IRS to understate the net business income of the pharmacies and the total amount of income that defendant Rao Desu received . . ."
>
> During the span of nearly a decade, the defendant and others diverted a large portion of their business earnings to avoid paying a higher rate of federal taxes on their earned income, resulting in a tax loss of over $1 million.
>
> Both the length of conspiracy as well as the quantity of money at issue highlight the seriousness of the offense, which weighs heavily on the Court's consideration of an appropriate sentence.

(Sentencing Tr. 66:22–67:21, ECF No. 160 (second and third alterations in original).)

The Court also considered the history and characteristics of Defendant. In doing so, the Court took into consideration Defendant character "and his many selfless good deeds[.]" (*Id.* at 70:3.) The Court, nevertheless, also noted that Defendant's "crimes were not the result of a mistake

in judgment or a one-time act of desperation. They were calculated and motivated by greed." (*Id.* at 31:2–4.)

In addition, the Court considered Defendant's health. The Court stated:

> Defendant suffers from obstructive sleep apnea, hypertension, high cholesterol, and coronary artery disease which necessitated the placement of stents in 2017, as well as in late 2019. The Court has not been provided with any evidence of how the [BOP] would not be able to adequately provide for defendant's medical needs. The Court notes that it has previously sentenced similarly situated defendants who are well over a decade older than the defendant. Moreover, although coronary artery disease is a serious condition, the Court has sentenced those with illnesses of a much higher and more severe level. The [BOP] has been able to successfully care for them during their incarceration and the Court sees no reason that the [BOP] could not do so.

(*Id.* at 70:7–20.) Moreover, the Court considered COVID. The Court stated:

> Defendant further cites COVID concerns. At this juncture, the Court is proceeding with the sentencing in person, children in many districts have gone back to school, indoor dining is now permitted, and the gyms, as well as theaters have reopened. Should pandemic conditions worsen, however, the Court would entertain a request for an extension of any kind of surrender date.[1]

(*Id.* at 70:25–71:6.)

With respect to specific deterrence, the Court found that Defendant is not likely to recidivate. (*Id.* at 71:12–13.) As to general deterrence, the Court highlighted that "because economic- and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence. . . .The sentence the Court imposes here today must reflect [Mr. Desu's] culpability and provide significant deterrence to all walks of life." (*Id.* at 71:17–20, 72:4–7.) Ultimately, the Court stated:

> What is also not lost on this Court, though, Mr. Desu, is the fact that you sat here through a jury trial, and the jury convicted you on all six counts. And the thing that we cannot avoid, what is inescapable at the end of the day here, that notwithstanding the outstanding representation that you've received from [your counsel], notwithstanding the outstanding support that you've received in the letters from your community, notwithstanding the love from your family, there are consequences for violating the law in the way that the jury convicted you and found that you violated it.

(*Id.* at 73:9–19.)

---

[1] As set forth earlier, the Court extended Defendant's surrender date three times.

5

As clearly demonstrated by the sentencing transcript, the Court carefully considered the relevant factors, including Defendant's health and the prevalence of COVID-19, when determining Defendant's sentence. Here, the Court finds no good cause to depart from its previously articulated § 3553(a) sentencing findings.

It is certainly unfortunate that Defendant had a negative reaction to the Moderna vaccine and could not receive the second dose. In addition, the Court is sympathetic to Defendant's medical conditions and his concerns regarding possible complications caused by COVID-19 once he reports to the BOP's facility. The Court, nevertheless, finds that reducing Defendant's sentence when Defendant has not served a single day of incarceration would not properly "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense[,]" or "afford adequate deterrence to criminal conduct[.]" 18 U.S.C. § 3553(a). Here, Defendant has failed to demonstrate that he is entitled to the requested relief.

## V.   ORDER

For the reasons set forth above,

**IT IS** on this 30th day of April 2021, **ORDERED** that:

1. Defendant's Motion for Sentence Reduction (ECF No. 170) is denied without prejudice.

2. Defendant's Motion to Continue Surrender Date Pending Decision on Motion for Sentence Reduction (ECF No. 176) is denied.

3. Defendant must surrender as scheduled on **May 5, 2021.**

4. The Clerk shall file this Letter Opinion & Order under Temporary Seal. By **May 14, 2021**, either party may file a Motion to Seal. If neither party files a Motion to Seal by this deadline, the seal on the Letter Opinion & Order will be lifted.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**